# In the United States Court of Federal Claims

No. 07-854 C
(Filed under Seal:  January 21, 2011)
(Reissued for Publication:  January 31, 2011)[*]
TO BE PUBLISHED

| | |
|---|---|
| FRANCES L. GREENHILL, | Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d); Fees and Expenses "Incurred"; Lack of Substantial Justification for Government's Position; Absence of Special Circumstances Making an Award Unjust; Fee Reduction for Partial Success; Absence of Special Factors That Would Justify Exceeding Statutory Cap on Hourly Rates; Cost of Living Adjustment; Recovery of Taxable Costs Under 28 U.S.C. § 1920, 28 U.S.C. § 2412(a); Recovery of Expenses Pursuant to EAJA, 28 U.S.C. § 2412(d)(1)(A) |
| Plaintiff, | |
| v. | |
| THE UNITED STATES, | |
| Defendant. | |

Gary T. Brown, Gary T. Brown & Associates, Washington, D.C., for plaintiff.  Lisa J. Brown, Gary T. Brown & Associates, Washington, D.C., of counsel.

William P. Rayel, Trial Attorney, Kenneth S. Kessler, Trial Attorney, Todd M. Hughes, Deputy Director, Jeanne E. Davidson, Director, Commercial Litigation Branch, Civil Division, Tony West, Assistant Attorney General, Department of Justice, Washington, D.C., for defendant. Dana Dobson, Office of General Counsel, Department of Education, Washington, D.C., of counsel.

## OPINION AND ORDER

GEORGE W. MILLER, Judge

Plaintiff requests $83,750 in attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d) (docket entry 115, July 14, 2010) ("Pl.'s Mot.").  Plaintiff also filed a bill of costs seeking $1,793.36 for costs incident to the taking of four depositions (docket

---

[*]  This opinion was originally filed under seal on January 21, 2011, pursuant to this Court's November 17, 2008 protective order, and the parties were given ten days to advise the court what, if any, redactions they believed were necessary before public issuance.  On January 31, 2011, the parties jointly informed the Court that no redactions were required (docket entry 144).  Accordingly, the Opinion and Order is released in its entirety.

entry 114, July 14, 2010).  *See* 28 U.S.C. § 2412(a); 28 U.S.C. § 1920.  Defendant contends that plaintiff is not entitled to any award of attorneys' fees, but if she is, the amount of the award must be substantially reduced (docket entries 116 & 117, Aug. 16, 2010) ("Def.'s Opp.").  The Court finds that plaintiff is entitled to recover attorneys' fees pursuant to EAJA, but in a lesser amount than she seeks.  In addition, the Court awards plaintiff the full amount of the costs she seeks.  Thus, plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.    Background

### A.    Pre-Litigation

As recounted in the Court's previous opinions,[2] Ms. Greenhill entered into a settlement agreement with her employer, the Department of Education ("DOE"), resulting in her resignation and a cash payment to her.  She later applied and was tentatively selected for a secretarial position with the Department of Justice ("DOJ").  During DOJ's pre-employment investigation, Ms. Greenhill's former supervisor at DOE, Mary Brayboy, made false and derogatory statements to a representative of DOJ regarding Ms. Greenhill's employment at DOE, which caused DOJ to more closely scrutinize Ms. Greenhill's application and to decline to hire her.

The letter DOJ sent to Ms. Greenhill withdrawing the tentative job offer stated that a "reference response" from DOE had raised questions about Ms. Greenhill's prior employment.  Ms. Greenhill believed that the reference response to which the DOJ letter referred breached the provision of the settlement agreement that required DOE to provide a neutral reference in response to inquiries from potential employers.

Although the settlement agreement required Ms. Greenhill to complain of an alleged breach within 30 days, it was more than a year after she received the DOJ letter before she sent a letter to DOE's Equal Employment Opportunity ("EEO") office informing it of the alleged breach.   The EEO office investigated the complaint, but ultimately dismissed it as untimely.  The Equal Employment Opportunity Commission ("EEOC") affirmed this decision. *Greenhill v. Spellings*, Appeal No. 01A45669, 2005 WL 433074 (E.E.O.C. Feb. 14, 2005).

### B.    Litigation

Proceeding *pro se*, Ms. Greenhill sued in the United States District Court for the District of Columbia, seeking, among other relief, $210,000 in damages for breach of the settlement contract.  *Greenhill v. Spellings*, No. 05-1100, 2005 WL 3508653 (D.D.C. Dec. 22, 2005).  The United States Court of Appeals for the District of Columbia Circuit affirmed the district court's holding that jurisdiction over Ms. Greenhill's claim was solely in the Court of Federal Claims, and remanded the case for transfer to this court.  *Greenhill v. Spellings*, 482 F.3d 569 (D.C. Cir. 2007).

---

[2]  The Court summarizes only the background necessary to resolve the pending motion to recover attorneys' fees under EAJA.  For a more detailed account of the background facts and procedural history, see *Greenhill v. United States*, 92 Fed. Cl. 385 (2010); *Greenhill v. United States*, 81 Fed. Cl. 786 (2008).

After Ms. Greenhill filed her transfer complaint in this court (docket entry 3, Jan. 2, 2008), the Government unsuccessfully argued that the complaint should be dismissed for failure to state a claim or, in the alternative, that the Government was entitled to summary judgment in its favor. *Greenhill*, 81 Fed. Cl. at 786. After the Court granted a number of extensions of time, Ms. Greenhill retained Gary T. Brown & Associates in July 2008 to represent her, and the case proceeded to the discovery phase. *See* Filing of Signed Retained Agreement, Ex. 1 at 1 (docket entry 129, Sept. 28, 2010); Scheduling Order (docket entry 22, Oct. 16, 2008) (scheduling discovery).

The parties' principal dispute concerned which provision of the settlement agreement governed DOJ's inquiry to DOE regarding Ms. Greenhill's past employment. Paragraph 2(b) of the settlement agreement required all requests for employment references to be handled by Joyce Boykin, who was to simply state "that Complainant 'resigned effective [date of Complaint's written resignation and reason],' and verify[] the dates of employment, Complainant's salary, GS-level, title, and performance ratings . . . ." *Greenhill*, 92 Fed. Cl. at 393. Paragraph 11, on the other hand, provided that plaintiff's records and related information could be released "for purposes of conducting any type of security, suitability, or background inquiry relating to Complainant." *Id.* at 394.

The case went to trial, with Ms. Greenhill asserting two main theories of breach of contract: (1) that the statements of Ms. Brayboy, plaintiff's former supervisor at DOE, violated the neutral reference provision in paragraph 2(b); and (2) that information regarding denial of a within-grade increase in pay remained in her personnel file in violation of paragraph 2(a) of the settlement agreement. Ms. Greenhill also contended that the DOE had dismissed her complaint on timeliness grounds improperly and in bad faith. The Court found that the evidence at trial supported the conclusion that Ms. Brayboy had breached the contract, but that plaintiff's other contentions lacked merit. *Id.* at 392. The Court awarded plaintiff $3,948 in damages. Plaintiff subsequently applied for $83,750 in attorneys' fees pursuant to EAJA and $1,793.36 as taxable costs pursuant to 28 U.S.C. § 1920 or, in the alternative, as a reasonable litigation expense pursuant to 28 U.S.C. § 2412(d)(1)(A). On November 8, 2010, the Court heard oral argument on plaintiff's application. Transcript of EAJA Hearing (docket entry 140, Nov. 30, 2010) ("EAJA Tr.").[3]

## II.    Plaintiff Meets the Criteria for an EAJA Award of Attorneys' Fees and Expenses

In order to award attorneys' fees pursuant to EAJA the Court must find that (1) Ms. Greenhill was a prevailing party; (2) the Government's position was not "substantially justified"; (3) there are no special circumstances that would make an award unjust; and (4) the fee application was submitted within 30 days of final judgment in the action and was supported by an itemized statement. 28 U.S.C. §§ 2412(d)(1)(A)-(B); *INS v. Jean*, 496 U.S. 154, 158 (1990).

---

[3] After the EAJA Hearing, Defense counsel moved for leave to file a correction of inadvertent misstatements (docket entry 141, Dec. 6, 2010). Defendant's motion for leave, which was unopposed, is **GRANTED**.

The parties agree that Ms. Greenhill is a prevailing party and that her EAJA application was timely.  The Government contends, however, that (1) plaintiff has not "incurred" attorneys' fees or expenses within the meaning of EAJA; (2) the Government's position was substantially justified; and (3) special circumstances make an award in this case unjust.  The Court concludes that plaintiff has incurred attorneys' fees and expenses and defendant has failed to show that its position was substantially justified or that "special circumstances" make an award unjust.

A.     *Plaintiff Incurred Fees and Expenses for Purposes of EAJA*

Defendant first argued that plaintiff had not incurred fees and expenses because she had not signed a retainer agreement with her attorneys.  After plaintiff proffered a signed retainer agreement (docket entry 129-1, Sept. 28, 2010), defendant argued that the retainer agreement only obligated plaintiff to pay her attorneys $1,000, and she therefore could not have "incurred" more than $1,000 in attorneys' fees for purposes of EAJA.  Defendant's Response to Plaintiff's Notice of Filing Signed Retainer Agreement at 4 (docket entry 130-1, Oct. 7, 2010).

An award of attorneys' fees under EAJA is "not necessarily contingent upon an obligation to pay counsel," and may be awarded when attorneys are working *pro bono*.  *Ed A. Wilson, Inc. v. Gen. Servs. Admin.*, 126 F.3d 1406, 1409 (Fed. Cir. 1997); *Rodriguez v. Taylor*, 569 F.2d 1231, 1245 (3d Cir. 1977).  In this case plaintiff entered into a retainer agreement that, fairly read, obligated her to pay attorneys' fees and expenses.  She has necessarily thus "incurred" attorneys' fees and expenses.[4]  Even without a signed retainer agreement, the decision of the Federal Circuit in *Wilson* makes clear that the existence of an attorney-client relationship, which in this case is not disputed, is sufficient to demonstrate that plaintiff has incurred fees and expenses.  *Wilson*, 126 F.3d at 1410.  The Government has conceded as much.  Defendant's Sur-Reply to Plaintiff's Petition for Attorneys' Fees at 4 (docket entry 127-1, Sept. 7, 2010) ("Def.'s Sur.") ("We recognize that, in one way or another, Ms. Greenhill has likely obligated herself to pay some fees to her attorneys.").   The Court concludes that because Ms. Greenhill entered into an agreement with counsel to pay fees and expenses and also because she was clearly in an attorney-client relationship with her counsel, she has "incurred" attorneys' fees within the meaning of EAJA.

---

[4] Defendant argues that plaintiff only incurred $1,000 in attorneys' fees because the agreement only obligated plaintiff to pay an initial $1,000 retainer.  *See Phillips v. Gen. Servs. Admin.*, 924 F.2d 1577, 1583 (Fed. Cir. 1991).  The Court disagrees with defendant's reading of the retainer agreement, which specifically fixed both her lawyers' hourly rates and a retainer amount.  Signed Retainer Agreement at 1.  Defendant's "contention [also] ignores the holding of *Phillips* that a plaintiff 'incurs' fees under EAJA so long as there is 'an express or implied agreement that the fee award will be paid over to the legal representative.'" *United Partition Systems, Inc. v. United States*, 95 Fed. Cl. 42, 54 (2010) (quoting *Phillips*, 924 F.2d at 1583).  There is no doubt in this case that Ms. Greenhill is obligated to pay over to her attorneys any award of attorneys' fees and expenses she may receive pursuant to EAJA.

B.       *The Government's Position Was Not Substantially Justified*

Defendant next contends that the Government's position was substantially justified. Because the parties concede that plaintiff is a prevailing party, the burden rests with the Government to show that its position was substantially justified, that is, "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *see also Scarborough v. Principi*, 541 U.S. 401, 414 (2004); *Libas, Ltd. v. United States*, 314 F.3d 1362, 1365 (Fed Cir. 2003).  To meet this burden, the Government's position must have a reasonable basis in law and in fact.  *Pierce*, 487 U.S. at 565.

Plaintiff asserted that Ms. Brayboy's conduct breached the contract because she gave a false and negative employment reference in violation of paragraph 2(b) of the settlement agreement.  Pl.'s Mot. at 2-3.  Plaintiff further notes that the Government initially defended Ms. Brayboy's actions on the ground that an employment reference and a background inquiry were substantively different inquiries, and argued that the Government was permitted under paragraph 11 of the settlement agreement to conduct a "security, suitability, or background inquiry" relating to Ms. Greenhill.  The Government contended that Ms. Brayboy's statements did not breach the contract because they were made in response to questions posed during such an inquiry.  However, the evidence at trial failed to support the argument that there was a sharp distinction between a background inquiry and an employment reference.  Thereafter, the Government changed its theory and argued that employment references occur prior to a decision on whether to make a tentative offer while background inquiries occur after a tentative offer has been made.  Defendant's Proposed Findings of Fact and Conclusions of Law at 16 (docket entry 90, Dec. 10, 2009); *see also* EAJA Tr. at 41 ("[W]hen Ms. [Brayboy] responded to DOJ's inquiry regarding Ms. Greenhill, she was responding to a security[,] suitability or background report.  It was our position based on language of the settlement agreement that a security[,] suitability or background report was excluded from the definition of employment records . . . .") (statement of defendant's counsel).  In response, defendant again contends that Ms. Braboy's statements were in response to a background inquiry and were therefore permitted by paragraph 11 of the contract.  Def.'s Opp. at 17-18; Def.'s Sur. at 9-10.

The Government has failed to meet its burden to show that its position was substantially justified.  The witnesses at trial—including the Government's own witnesses—undermined the sharp distinction the Government attempted to draw between employment references and background inquiries, as those terms were used in the settlement agreement.  *Greenhill*, 92 Fed. Cl. at 394-95.  In addition, the Court found that Ms. Brayboy's actions not only breached the contract, but also violated the implied covenant of good faith and fair dealing.  *Id*. at 396.  The Government does not explain how its continued adherence to the distinction it sought to draw (but failed to prove at trial) was substantially justified, to say nothing of consistent with its obligations under the implied covenant of good faith and fair dealing.  *Id*.

When testimony presented at trial by the Government's own witnesses contradicts the Government's contentions, courts have not hesitated to find that the Government's position was not substantially justified.  *PCI/RCI v. United States*, 37 Fed. Cl. 785, 790 (1997) (concluding that the sheer weight of the evidence against the Government's contention showed that the Government was unreasonable in continuing to pursue that contention); *see also Tchemkou v. Mukasey*, 517 F.3d 506, 510 (7th Cir. 2008) (finding that when the Government argued a

position that was contrary to the evidence, its position was not substantially justified); *Gutz v. United States*, 45 Fed. Cl. 291, 302 (1999) (finding that the Government's position was not substantially justified when it was contradicted by the language of a settlement agreement).  In this case, the testimony at trial did not support—in fact, largely contradicted—defendant's theory that Ms. Brayboy's comments were made in response to a background inquiry, rather than a request for an employment reference, as the parties to the settlement agreement understood those terms.

It is not disputed that the Government's position was substantially justified on those issues on which it prevailed: namely, the purported existence of documents in Ms. Greenhill's personnel file regarding the alleged denial of a within-grade increase and the contention that the DOE EEO office dismissed her complaint in bad faith.  The question thus becomes whether the Government's position overall was substantially justified.  *Manno v. United States*, 48 Fed. Cl. 587, 590 (2001) (noting that the court "examines the entirety of the Government's conduct and makes a single finding as to whether the Government's position was substantially justified.").

When the Government takes some positions that are substantially justified and some that are not, courts have asked whether the latter were "sufficiently dramatic in impact" to justify an award of fees.  *Precision Pine & Timber, Inc. v. United States*, 83 Fed. Cl. 544, 551-53 (2008); *Loomis v. United States*, 74 Fed. Cl. 350, 355 (2006).  Whether Ms. Brayboy breached the contract in providing derogatory and false information in response to an inquiry from Ms. Greenhill's prospective employer was the central issue at trial.  The Government's failure to take a substantially justified position on that issue was sufficiently dramatic in impact on the course of the litigation to warrant an award of fees and expenses under EAJA.

C.      *Special Circumstances Do Not Make an EAJA Award Unjust.*

When otherwise warranted, awards pursuant to EAJA should be made unless the defendant can show there are special circumstances making an award of attorneys' fees and expenses unjust.  28 U.S.C. § 2412(d)(1)(A); *see Brewer v. Am. Battle Monuments Comm'n*, 814 F.2d 1564, 1569 (Fed. Cir. 1987) (stating that defendant has the burden of proving special circumstances making an award unjust).  Defendant contends that two such special circumstances exist in this case.  First, defendant contends that plaintiff incorrectly responded to a question on the SF-85P form she submitted as part of her application for a position at DOJ. According to defendant, this entire litigation would have been avoided if plaintiff had correctly completed that form.  Thus, the Government argues, awarding plaintiff attorneys' fees and expenses for litigating this case would be unjust.  Def.'s Opp. at 7.  Second, defendant contends that the conduct of plaintiff's counsel "led to significant delays" to the extent that awarding plaintiff fees would be unjust.  Def.'s Opp. at 8-15 (detailing the conduct of plaintiff's counsel that resulted in multiple delays during discovery).  Although there is some force to each contention, the Court concludes that neither (nor both taken together) show any special circumstance that would make an award of attorneys' fees and expenses unjust.

1.      Plaintiff's Error in Completing the Form SF-85P Does Not Preclude an
        Award

Defendant first re-asserts an argument it made at trial, namely, that plaintiff's incorrect
answer on a DOJ questionnaire requires that plaintiff recover nothing.  Specifically, plaintiff
responded "no" to a question asking whether she had ever left a job by mutual agreement after
allegations of unsatisfactory performance.  Def.'s Opp. at 7.  Defendant contends that if plaintiff
had answered that question truthfully, DOJ would not have contacted Ms. Brayboy, no breach
would have taken place, and this litigation would therefore not have occurred.  *Id.*  Defendant
argues it would be unjust to award fees and expenses because plaintiff's incorrect answer caused
this litigation.

Courts look to equitable principles such as the doctrine of "unclean hands" in
determining whether there are special circumstances that would make an EAJA award unjust.
*Air Transp. Ass'n of Can. v. Fed. Aviation Admin.*, 156 F.3d 1329, 1333 (D.C. Cir. 1998); *see
also Oguachuba v. INS*, 706 F.2d 93, 98 (2d Cir. 1983) (interpreting EAJA to direct courts "to
apply traditional equitable principles" when determining whether an award would be unjust).
Using these equitable principles, EAJA awards have been found unjust when a plaintiff
purposefully takes advantage of government misconduct and subsequently challenges that same
misconduct.  *Oguachuba*, 706 F.2d at 99 (awarding plaintiff attorneys' fees would be inequitable
when the litigation resulted from plaintiff's own purposeful repeated violations of law); *United
States Dep't of Labor v. Rapid Robert's, Inc.*, 130 F.3d 345, 349 (8th Cir. 1997) (awarding
attorneys' fees would be unjust when plaintiff successfully overturned a regulatory fine on
procedural grounds but knowingly violated the governing statute).

Ms. Greenhill testified at trial that she answered "no" to the question on the SF-85P form
because she believed the information was protected from disclosure by the settlement agreement.
*Greenhill*, 92 Fed. Cl. at 389.  Regardless of whether plaintiff's belief was correct, the Court
does not regard the evidence as sufficient to permit a finding that plaintiff intended to
purposefully mislead or deceive DOJ.  Without evidence of purposeful deceit, plaintiff's error
does not render an EAJA award unjust.

2.      The Conduct of Plaintiff's Counsel Does Not Preclude an Award

Defendant's second argument is that Mr. Brown's conduct before, during, and after trial
makes an award of fees and expenses unjust.  Specifically, defendant argues that plaintiff's
counsel's "blatant disregard for this Court's rules and orders" caused significant delays, which
prolonged the litigation.  Def.'s Opp. at 15.

Improper conduct by an attorney may result in denial of EAJA fees when the attorney's
conduct creates the need for the litigation for which he is seeking payment.  *Webb v. Astrue*, 525
F. Supp. 2d 1329, 1334 (N.D. Ga. Sept. 6, 2007) (denying attorneys' fees because plaintiff's
counsel failed to raise an issue before an administrative law judge that ultimately resulted in
litigation for which the attorney sought fees); *Wimpy v. Barnhart*, 350 F. Supp. 2d 1031, 1036
(N.D. Ga. Aug. 31, 2004) (denying attorney's fees when plaintiff's attorney successfully
obtained a remand to consider an expert opinion, but attorney's own negligence in failing to

timely disclose expert's opinion resulted in the remand). In other words, an attorney cannot receive fees when the case was only in court due to the attorney's own improper conduct.

Plaintiff should not be denied an award of attorney's fees because, although causing inconvenience and delay, Mr. Brown's conduct was not the cause of this litigation. Additionally, defendant has not shown that Mr. Brown's conduct so unreasonably and unduly protracted this litigation as to warrant a reduction in EAJA fees pursuant to 28 U.S.C. § 2412(d)(1)(C).[5]

## III.    Plaintiff's Requested Attorneys' Fees Must Be Reduced

Analyzing a request for an award of attorneys' fees pursuant to EAJA includes a two-step process. First, the Court multiplies the hours the attorney reasonably devoted to the case by an appropriate hourly rate. The Court must exclude hours that were not reasonably expended because they were "excessive, redundant, or otherwise unnecessary."[6]  *Hensley*, 461 U.S. at 433-34; *see also Hubbard v. United States*, 480 F.3d 1327, 1333 (Fed. Cir. 2007) ("Although [*Hensley*] involved the fee-shifting provision of the Civil Rights Act, we see no reason why the . . . principles there announced should not be equally applicable to the parallel fee-shifting provision of [EAJA]."). Second, the Court must adjust the fee award to ensure it is reasonable, especially in light of the results obtained by counsel. *Hensley*, 461 U.S. at 434. In this case, the Court has concluded that a number of hours logged by plaintiff's counsel were not reasonably expended. The Court has also determined that the otherwise allowable fees should be reduced by 60% to reflect plaintiff's limited success.

### A.    Plaintiff is Entitled to Reasonable Attorneys' Fees

#### 1.    Mr. Brown's Hours

Plaintiff's initial EAJA application included billing records that showed Mr. Brown devoted 321.2 hours to prosecuting plaintiff's case. Pl.'s Mot. at Attachment 2. Mr. Brown's hours were subsequently amended to include an additional 59.4 hours attributable to work on the EAJA application, for a total of 380.6 hours. Plaintiff's Case on Nominal Damages at 1 (docket entry 136-1, Nov. 15, 2010). Plaintiff proposes a "ten percent reduction to simplify the review

---

[5] Mr. Brown's failure to comply with court orders, failure to cooperate with defense counsel, and repeated motions for extensions of time are not without consequences. The Court takes these into consideration when determining the degree to which certain time entries must be excluded because they relate to work that was unnecessary. *See infra* III.A.1. But the Court is unwilling to conclude that Mr. Brown's conduct in this case was so egregious that *any award of fees* would be unjust.

[6] Furthermore, the language of counsel's bills or time entries must be specific enough for the Court to determine whether the time spent on a particular activity was reasonable. *Naporano Iron & Metal Co. v. United States*, 825 F.2d 403, 404 (Fed. Cir. 1987). When counsel's time records are not adequately detailed, the hours inadequately documented should be excluded. *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

process," Pl.'s Mot. at 5, which defendant endorses as a minimum reduction. Def.'s Opp. at 35 n.24. Upon review of Mr. Brown's time entries, the Court concludes that a reduction of substantially more than ten percent is required.

First, defendant argues that the Court should exclude all time billed from January 31, 2009 to July 1, 2009 because plaintiff "unduly and unreasonably" delayed discovery. Def.'s Opp. at 9-12, 35. Without plaintiff's numerous motions for extension of time, defendant argues, discovery would have been completed by January 30, 2009, so any hours worked after that date to the actual end of discovery—July 1, 2009—should be excluded as unreasonable. Def.'s Sur. at 13. This would result in reducing Mr. Brown's hours by 60. *See* Def.'s Opp. at 35.

Although defendant properly highlights the repeated delays of plaintiff's counsel, the Court declines to make such a wholesale reduction. Some of the activity that occurred after January 30, 2009 would have occurred in the normal course of discovery regardless of whether there had been delays. Plaintiff should be allowed to claim time spent on discovery activities such as taking depositions and completing answers to interrogatories, even if those activities were delayed due to counsel's need for extensions of time. The Court will, however, exclude 4.1 hours that were billed as a direct result of plaintiff's delays.[7]

Similarly, the Court concludes that the hours billed due to the Court's having twice ordered counsel for plaintiff to file a statement explaining plaintiff's theory of damages must be excluded. Had counsel complied with Rule 26(a)(1)(A)(iii) of the Rules of the Court of Federal Claims ("RCFC") and properly set forth her theory of damages at an early stage, these hours would not have been necessary. Hours billed for the failure of plaintiff's counsel to comply with court rules are necessarily hours that are "excessive, redundant, and otherwise unnecessary." The Court has identified 18.3 hours in this category that will be excluded.[8] *Hensley*, 461 U.S. at 434.

In addition, the Court must exclude time that is excessive. *Hensely*, 461 U.S. at 434; *see also Altergott v. Modern Collection Techniques, Inc.*, 864 F. Supp. 778, 781 (N.D. Ill. 1994). In October and November 2008, Mr. Brown billed 3.6 hours to preparing a proposed protective

---

[7] This includes: 0.8 hour spent filing motions for extension of time through January and February 2009 that were requested due to plaintiff's own delay; 0.8 hour billed between February 13 and 20, 2009, for the filing of a joint status report, which counsel for defendant observes he had to file unilaterally after which the Court ordered plaintiff to respond (docket entry 32, Feb. 17, 2009); 0.8 hour billed between March 13 and 19, 2009, for the filing of a joint status report, which defendant's counsel had to file unilaterally after which the Court ordered plaintiff to respond (docket entry 37, March 13, 2009); 0.2 hour billed to discussing a motion for extension of time with defense counsel on March 30, 2009; and 1.5 hours billed in April 2009 to a joint status report and a status conference during which the Court threatened dismissal of plaintiff's action for failure to prosecute (docket entry 45, April 17, 2009).

[8] The hours excluded as unnecessary are 2.3 hours on August 24, 2009, 6.9 hours on August 26, 2009, 0.8 hour on September 1, 2009, 3.7 hours on September 2, 2009, and 4.6 hours on September 3, 2009.

order that was ultimately written by defendant's counsel.[9]  The Court will include half of those hours.  In addition, between November 17, 2009 and January 26, 2010, Mr. Brown billed 37.7 hours to preparing his closing argument, which lasted less than an hour.  *See* Def.'s Opp. at 34-35 (observing that Ms. Brown also billed 10.75 hours to preparation of plaintiff's closing argument).  Considering that trial lasted only two and a half days and that plaintiff failed to justify the amount of time billed to this activity, the Court will permit fees based on ten hours of Mr. Brown's time preparing the closing statement.

Between August 2009 and January 2010, Mr. Brown billed 10.2 hours to meetings with his associate, Lisa Brown, but only the August 25 and 30 meetings appear in Ms. Brown's billing records.  Time spent in meetings that do not appear in both attorneys' billing records are rightfully excluded.  *Role Models*, 353 F.3d at 972.  The two meetings that appear in both attorneys' records are lumped together with other activities, and the Court is unable to determine the reasonableness of the amount of time spent on each specific activity.  *See id.* at 971.  Therefore, the Court excludes 10.2 hours of time Mr. Brown billed for meetings that do not correspondingly appear in Ms. Brown's time entries.

Finally, the Court excludes 20.3 hours for a variety of other reasons.  The Court excludes 4.7 hours for tasks that could have been accomplished by a non-attorney.[10]  *Id.* at 972.  The Court excludes 6.5 hours because they were billed to activities not sufficiently well-described to determine the time's reasonableness.[11]  *Hensley*, 461 U.S. at 433; *Role Models*, 353 F.3d at 971.  The Court will exclude 0.7 hour billed to reviewing defendant's discovery requests on December 9, 2008, because the requests were not served until December 11 (docket entry 27, Dec. 12, 2008).  Mr. Brown billed 4.6 hours for taking Julie Jackson's deposition on May 27, 2009, but that deposition was taken on June 2, 2009.  Def.'s Opp. at 35 n.24.  These hours are excluded.  In addition, on June 23 and 24, 2009, counsel for plaintiff billed 3.8 hours in a block billing entry devoted to preparing for and taking the deposition of Ms. Bettie Morton.  Counsel then listed each activity separately for a total of an additional 3.8 hours.  Because these hours relate to the same work for the same deponent and equal amounts of time, the Court will only include the 3.8 hours of Mr. Brown's time once.

Plaintiff is entitled to recover fees reasonably expended in litigating plaintiff's EAJA application.  *Jean*, 496 U.S. at 166; *Schuenemeyer v. United States*, 776 F.2d 329, 333 (Fed. Cir.

---

[9] In his October 22, 2008 time entry, Mr. Brown writes that he reviewed defendant's "proposed Protective Order."  Pl.'s Mot., Attachment 2 at 2.

[10] This includes 2.2 hours billed to organizing files on August 14, 2008, 0.5 hour billed to filing a notice of appearance on September 17, 2008, and 2.0 hours billed for obtaining a copy of the trial transcript on December 11, 2009.

[11] The following hours are excluded because the descriptions lack specificity:  1.7 hours billed to "develop strategy" on August 27, 2008; 2.3 hours billed to meeting with witness Kilpatrick on August 28, 2009; 1.4 hours billed to "[d]igest Daria Stec deposition" on September 1, 2009; 0.7 hour billed for "[r]esearch decision on cases" on January 6, 2010; 0.4 hour on April 22, 2010 for "[o]pening regarding redactions."

1985).  Considering that both parties made numerous filings contesting a large number of issues, which prompted the Court to order a hearing on plaintiff's application, the 59.4 hours Mr. Brown billed to litigating plaintiff's EAJA application are reasonable, and the Court will therefore not reduce them as excessive, redundant, or otherwise unnecessary.  After adding the hours Mr. Brown spent on the EAJA application and making the necessary subtractions for hours the Court has excluded, the hours recoverable due to work by Mr. Brown are 289.9.[12]

2.   <u>Lisa Brown's Hours</u>

Ms. Lisa Brown billed 102.3 hours for work on plaintiff's case, Pl.'s Mot. at Attachment 3, with an additional 4.5 hours spent on the EAJA application for a total of 106.8 hours. Plaintiff's Case on Nominal Damages at 1 (docket entry 136-2, Nov. 15, 2010).  Defendant contends that the description of as much as 72.3 hours lack sufficient detail and argues that Ms. Brown's hours should be reduced by 50%.  Def.'s Opp. at 35.  Plaintiff concedes that Ms. Brown's billing records related to researching unspecified issues are inadequate and offers to reduce the hours billed for such research by 20%.  Pl.'s Reply at 14.  The Court has also concluded that it must reduce Ms. Brown's hours based on time entries that are inadequately detailed, duplicative, and excessive.

Several of Ms. Brown's time records—totaling 8.25 hours—lack enough specificity for the Court to determine whether those hours were reasonably expended.  *See Hensley*, 461 U.S. at 433; *Role Models*, 353 F.3d at 972.  These hours are thus excluded.[13]  Many of Ms. Brown's entries also appear excessive based on the descriptions she has provided.  From October 2009 to January 2010, Ms. Brown billed 39.5 hours to researching and "draft[ing the] post trial brief." Without more information, the Court cannot determine whether this time was reasonably spent, and therefore will limit the time billed by Ms. Brown for work on plaintiff's post-trial brief to 15 hours.  Also, Ms. Brown billed 10.75 hours to preparation of plaintiff's closing statement.[14] Defendant contests this charge as excessive in view of the fact that the closing statement lasted less than one hour.  Def.'s Opp. at 34-35.  The Court reduces Ms. Brown's hours to 3.5, which were reasonably devoted to work on plaintiff's closing statement.  Finally, on September 5 and 7, 2009, Ms. Brown billed 5.3 hours for reviewing the transcript of Julie Jackson's deposition and drafting questions for Ms. Jackson's direct examination.  Defendant contends that the time

---

[12] Mr. Brown's billing records state he worked on plaintiff's case for 321.20 hours, but 8.3 of these hours were listed as "No Charge." Pl.'s Mot. at Attachment 2 (capitalization altered). This left Mr. Brown with 312.9 hours, but 59.4 hours must be added for the time spent on plaintiff's EAJA application.  After the Court excludes 82.5 hours for the reasons listed in III.A.1, the total is 289.8 hours.  (372.3 - 82.4 = 289.9).

[13] The hours excluded for inadequate details are:  3.5 hours billed on August 25, 2009 for "research" and a meeting with Mr. Brown; 2.5 hours billed for "researched issues regarding Greenhill case" on August 26, 2009; and 2.25 hours billed on August 30, 2009 for a meeting to "strategize about hearing for Greenhill case."  Pl.'s Mot. at Attachment 3.

[14] This time must also be reduced as duplicative because Mr. Brown billed 37.7 hours for the same activity.  *See Role Models*, 353 F.3d at 972.

devoted to these activities is excessive given that Ms. Jackson's direct examination lasted less than 30 minutes.  Def.'s Opp. at 35.  Plaintiff offers no justification for the expenditure of 5.3 hours preparing Ms. Jackson's direct examination.  The Court has concluded that the time billed by Ms. Brown for preparing Ms. Jackson's direct examination should be reduced to 2.7 hours.

After the Court's reductions for excessive time and inadequately detailed billing records, the recoverable hours due to work by Ms. Brown are 64.2.[15]

> B.      Plaintiff is Not Entitled to Exceed the Statutory Hourly Rate Cap for Specialized Expertise of Counsel, But She is Entitled to a Cost of Living Adjustment ("COLA")

> 1.      Plaintiff Has Not Demonstrated a Special Factor That Would Justify Exceeding the Statutory Hourly Rate Cap

In her request for attorneys' fees, plaintiff asks the Court to award her fees at an hourly rate for Mr. Brown that exceeds the statutory limit.[16]  First, plaintiff claims that fees should be awarded at an enhanced hourly rate because there were a limited number of attorneys qualified to handle her case.  Pl.'s Mot. at 1.  Second, plaintiff seeks an enhancement because this matter was litigated in court "under more stringent and exacting process than are utilized in the normal administrative proceeding for which EAJA fees are most often awarded."  *Id*.  The Court concludes that plaintiff has not established a basis for an award based on an hourly rate that exceeds the statutory cap.

EAJA limits the hourly rate at which attorneys can be reimbursed to $125 "unless the court determines that . . . a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."  28 U.S.C. § 2412(d)(2)(A).  The Supreme Court has interpreted this provision to require attorneys to have "some distinctive knowledge or specialized skill . . . as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation."  *Pierce*, 487 U.S. at 572.  Specifically, expertise in a specialty such as patent law or "knowledge of foreign law or language" would be the type of circumstance justifying a higher hourly rate.  *Id*. at 572.  In *Pierce*, the Court rejected as special factors "the novelty and difficulty of the issues," "the work and ability of counsel," and the "results obtained."  *Phillips v. Gen. Servs. Admin.*, 924 F.2d 1577, 1584 (Fed. Cir. 1991) (citing *Pierce*, 487 U.S. at 571-73).

This was a breach of contract case.  No specialized knowledge or skill beyond what is generally required to practice law in state or federal courts was needed to litigate the issues.  As defendant correctly notes, this case was decided on general principles of contract law, not federal EEO law.  Def.'s Opp. at 27.  Any expertise in EEO law was tangential to the issues litigated in

---

[15] The Court excluded 42.6 of Ms. Brown's hours.  (106.8 - 42.6 = 64.2).

[16] Plaintiff also claims counsel's hourly rates should exceed the statutory limit set forth in 28 U.S.C. § 2412(d)(2)(A) because the Court should apply a cost of living adjustment.  Pl.'s Mot. at 1.  Because the statute provides for a COLA separate from fee enhancements, this argument will be dealt with in Section III.B.2, *infra*.

this case.  *See JGB Enters. v. United States*, 83 Fed. Cl. 20, 32-33 (2008) (knowledge of contract law does not qualify as a factor justifying a rate increase).  Even if some specialized skills were needed to navigate the law relating to a federal EEO settlement agreement, knowledge of a complex statutory and regulatory framework is not enough to qualify as a special factor justifying a higher hourly rate.[17]  *See In re Sealed Case 00-5116*, 254 F.3d 233, 235-36 (D.C. Cir. 2001) (denying an enhancement because knowledge of federal election law was not a special circumstance); *F.J. Vollmer Co. v. Magaw*, 102 F.3d 591, 598 (D.C. Cir. 1996) (noting that lawyers practicing administrative law often develop an expertise in a particular regulated industry, "[b]ut they usually gain this expertise from experience, not from the specialized training justifying fee enhancement"); *Chynoweth v. Sullivan*, 920 F.2d 648, 650 (10th Cir. 1990) (finding no special factor in a case involving Social Security benefit law because a practitioner should be able to grasp the field even though the area "involves a complex statutory and regulatory framework").  Neither knowledge of contract law nor knowledge of federal EEO law justifies an enhancement of the statutory rate in this case.

Plaintiff further argues that Mr. Brown is entitled to an enhanced hourly rate because there was a "need to litigate this matter in a court under more stringent and exacting processes than are utilized in the normal administrative proceedings."  Pl.'s Mot. at 1.  The statute specifically contemplates awarding attorneys' fees for *civil actions*, so the fact that this case was litigated in court rather than in an administrative forum does not justify a higher rate.  28 U.S.C. § 2412(d)(1)(A) (fees awarded for civil actions); 28 U.S.C. § 2412(d)(2)(G) (defining final judgment in § 2412(d) as "a judgment that is final and not appealable"); *see also In re Sealed Case 00-5116*, 254 F.3d at 237 (declining to enhance the statutory rate because plaintiffs hired attorneys who had experience in federal litigation).  Because no special factor is present in this case that would justify exceeding the hourly rate set by EAJA, the Court concludes that there is no basis for awarding plaintiff a fee enhancement.

### 2.   Plaintiff is Entitled to a COLA

Plaintiff asks the Court to provide for a COLA.  Pl.'s Mot. at 3.  To receive a COLA, the plaintiff does not need to do any "more than request such an adjustment and present a basis upon which the adjustment should be calculated."[18]  *Cal. Marine*, 43 Fed. Cl. at 733 (1999); *JGB*

---

[17] At oral argument, plaintiff attempted to analogize the practice of federal personnel law to learning a foreign law.  EAJA Tr. at 20 ("I am suggesting that Federal personnel law is like a foreign law.") (statement of plaintiff's counsel).  This argument, if adopted, would cause the exception to swallow the rule because mastering any complex statutory and regulatory framework could be analogized to learning foreign law, and courts have routinely rejected knowledge of such frameworks as a basis for enhancing the hourly rate.

[18] Defendant objects to awarding plaintiff a COLA, arguing that plaintiff failed to present a basis for calculating the adjustment in her filings in support of her EAJA application.  Def.'s Opp. at 31-32.  This argument fails to consider both the purpose of EAJA and the fact that courts have freely taken judicial notice of relevant, readily-available data when plaintiffs have failed to supply courts with the relevant information.  *Cal. Marine Cleaning, Inc. v. United States*, 43 Fed. Cl. 724, 734 (1999) (taking judicial notice of CPI-U data when plaintiff failed to provide such data to the court); *see also Kunz Constr. Co. v. United States*, 16 Cl. Ct. 431, 438 (1989).

*Enters.*, 83 Fed. Cl. at 33.  Except in unusual circumstances, a COLA should be freely given to plaintiffs applying for attorneys' fees under EAJA.  *Baker v. Bowen*, 839 F.2d 1075, 1084 (5th Cir. 1988); *see also Payne v. Sullivan*, 977 F.2d 900, 903 n.2 (4th Cir. 1992) (noting that many circuits consider the COLA "essentially perfunctory") (citation omitted).  By providing in the statute for a COLA, Congress intended that such an adjustment be seriously considered in EAJA applications.  *Baker*, 839 F.2d at 1084.  In view of the fact that the purpose of EAJA is to remove financial barriers to challenging wrongful government action, it would undermine the purpose of the statute to deny plaintiff's request for a COLA.  *Payne*, 977 F.2d at 903 (citing *Baker*, 839 F.2d at 1084); *see also JGB Enters.*, 83 Fed. Cl. at 33 n.14 (noting that courts have awarded a COLA even when plaintiffs did not specifically request such an adjustment).

When calculating a COLA, courts have routinely based adjustments on the consumer price index for urban consumers ("CPI-U").  *CEMS, Inc. v. United States*, 65 Fed. Cl. 473, 486 (2005).  To determine a COLA, the Court multiplies the base EAJA rate of $125 by the CPI-U for the month the time was billed.  *Id.*  This product is then divided by 155.7, the CPI-U in March 1996 when the statutory cap was last amended.  *Id.; see also JGB Enters.*, 83 Fed. Cl. at 33 n.15 ("March 1996 is the effective date of the amended statutory cap.")  In cases that span several years—such as this one—courts have often determined a relevant mid-point from which to calculate the COLA, rather than calculating a COLA based on each month in which the attorney billed time.  *E.g., United Partition Sys.*, 95 Fed. Cl. at 58; *Geo-Seis Helicopters, Inc. v. United States*, 79 Fed. Cl. 74, 79 (2007); *Lion Raisins, Inc. v. United States*, 57 Fed. Cl. 505, 519 (2003); *see also Chiu v. United States*, 948 F.2d 711, 722 n.10 (Fed. Cir. 1991) ("By holding that a post-performance COLA may not be awarded, we do not mean to preclude the court from adopting, in an appropriate case, a single mid-point inflation adjustment factor applicable to services performed before and after that mid-point.").

The parties have agreed that an appropriate mid-point for the services rendered in this case is September 2009, the month in which the trial occurred.  *See* Defendant's Response to the Court's November 8, 2010 Order at 2 (docket entry 134, Nov. 15, 2010) ("Def.'s Nov. 2010 Resp.").  Mr. Brown has represented Ms. Greenhill in this case since July 2008, approximately 28 months at the time plaintiff's EAJA application was fully briefed, which would also make the mid-point September 2009.[19]  Therefore, the hourly rate incorporating a COLA is set at $173.39 for Mr. Brown.[20]

Defendant argues that Ms. Brown should not get a full COLA because her billing rate was $150 per hour, which is less than the statutory cap plus COLA.  Def.'s Nov. 2010 Resp. at 4.  EAJA only authorizes an award *of the lower of* the attorney's billing rate or the statutory cap plus a COLA.  *Carmichael v. United States*, 70 Fed. Cl. 81, 86 (2006) (capping an attorney's fees at $150 per hour when a COLA would have provided a higher hourly rate because $150 per hour was the rate actually billed); *KMS Fusion, Inc. v. United States*, 39 Fed. Cl. 593, 605 (1997)

---

[19] The CPI-U for September 2009 is 215.969.  Def.'s Nov. 2010 Resp. at 3 n.3; BUREAU OF LABOR STATISTICS, CONSUMER PRICE INDEX DETAILED REPORT, SEPTEMBER 2009, *available at* http://www.bls.gov/cpi/cpid0909.pdf.

[20] (($125 x 215.969)/155.7 = $173.39).

(applying the discounted hourly rates plaintiff actually paid rather than the higher statutory cap plus COLA). Therefore, rather than awarding Ms. Brown the higher rate provided for by applying the COLA to the statutory cap, she will be limited to the $150 per hour she actually charged in accordance with the retainer agreement.

      C.     *Plaintiff's Award Must Be Reduced to Reflect Her Partial Success at Trial*

After calculating the hours reasonably expended multiplied by an appropriate hourly rate, the Court may adjust the fee award to ensure the award is reasonable. *Hensley*, 461 U.S. at 434. The most important factor in making this determination is the degree of success obtained by counsel. *Id.* "This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Id.* When the plaintiff has only partially succeeded, the Court must first determine whether the successful claims were related to or separate from the claims on which plaintiff did not prevail. *Id.* Then the Court must determine whether "plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Id.*

In this case, plaintiff's breach of contract claims involved the same settlement agreement and the calculation of damages sustained by Ms. Greenhill as a result of the breach. Because this "lawsuit cannot be viewed as a series of discrete claims," the Court must "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435. When a plaintiff is only partially successful, the Court should reduce the attorneys' fees awarded to ensure they are reasonable in light of plaintiff's partial success. *Id.* at 436.

In determining an appropriate adjustment for partial success, the Court may consider the ratio of successful claims to the total claims plaintiff advanced. *Dalles Irrigation Dist. v. United States*, 91 Fed. Cl. 689, 704 (2010) (awarding plaintiff three-sevenths of the fees requested when plaintiff prevailed on three of its seven claims). But a winning claim may require more attorney time than a losing claim, thereby justifying a higher award.[21] *Garrett*, 2 F.3d at 1146. Although informative, these sorts of ratios are not determinative. The guiding principle is that any reduction should result in an award "that is reasonable in relation to the result obtained." *Hensley*, 461 U.S. at 440.

Defendant argues that out of six major issues at trial, plaintiff only prevailed on one. Def.'s Opp. at 23-24. Defendant further contends that plaintiff received less than three percent of the damages she sought in her post-trial brief, and concludes that the fees sought should be reduced by no less than 80%. Def.'s Opp. at 26. In response, plaintiff argues that there is no *per se* rule requiring that the amount of a judgment be proportional to the amount of fees awarded,

---

[21] In *Garrett* the Government argued that plaintiff was only successful on one of its six claims and should, therefore, only receive a fee award for one-sixth the requested amount. *Cmty. Heating & Plumbing Co. v. Garrett*, 2 F.3d 1143, 1146 (Fed. Cir. 1993). Although only successful on one claim, the Federal Circuit awarded plaintiff 30% of the fees requested because 30% of the attorneys' time was devoted to prosecuting the one successful claim. *Id.*

but fails to offer any reason why she should receive full reimbursement for attorneys' fees when she was only partially successful at trial.  Pl.'s Reply at 3.

Plaintiff's requested fees must be reduced, but not to the extent that defendant urges.  In resolving plaintiff's claims, the Court did find that the Government breached its agreement with plaintiff, which entitled plaintiff to recover damages caused by the breach.  *Greenhill*, 92 Fed. Cl. at 396, 401.  Plaintiff was not successful on her other breach claims.  *Id.* at 397. Furthermore, plaintiff was only partially successful on the issue of damages because she was awarded $3,948 rather than what she sought, $135,315 plus interest and reinstatement to her old position.  Plaintiff's Theory of Damages at 4 (docket entry 72, Sept. 3, 2009).  Plaintiff did, however, prevail at trial on the central issue.

Defendant estimates that the question whether Ms. Brayboy's comments breached the settlement agreement accounted for 30-35% of the trial time.  Def.'s Opp. at 35.  While acknowledging that fee adjustments are not strictly mathematical calculations, *Hensley*, 461 U.S. at 435 n.11, defendant notes that approximately 36% of the transcript pages were dedicated to testimony on issues on which plaintiff prevailed and approximately 26% of the exhibits at trial were "substantially related" to issues on which plaintiff prevailed.  Def.'s Mot. at 25.  Although not determinative, these factors buttress the Court's conclusion that approximately 40% of the allowable hours were spent litigating issues on which plaintiff ultimately prevailed.  The Court therefore concludes that the EAJA fee award to which Ms. Greenhill would otherwise be entitled should be reduced by 60%.[22]

The Government argues that the Federal Circuit held in *Hubbard* that any award of attorneys' fees cannot be grossly disproportionate to the actual damages obtained.  Def.'s Opp. at 23.  In *Hubbard*, the Federal Circuit reversed an award of attorneys' fees that was 275 times greater than the damages recovered because the trial court did not adequately explain why the fee award was reasonable in light of plaintiff's limited success.  *Hubbard*, 480 F.3d at 1333.  On remand the trial court awarded attorneys' fees of $68,797.31, an amount 172 times the $400 in damages plaintiff recovered.  *Hubbard v. United States*, 80 Fed. Cl. 282, 285-86 (2008).  That award was upheld by the Federal Circuit.  *Hubbard v. United States*, 315 F. App'x 307 (Fed. Cir. 2009).

Although plaintiff's fee award is greater than the damages she was awarded at trial, it is not so great in reference to her success at trial as to make it unreasonable.  The Government mounted a vigorous, determined, and unrelenting defense throughout the underlying action.  In the face of the Government's demonstrated strategy of litigating every issue to the fullest, plaintiff's counsel conducted discovery, presented plaintiff's case and defended it from attack during a two-day trial, prepared post-trial briefs, presented plaintiff's closing argument, and

---

[22] The fees attributable to preparing the EAJA application will also be reduced by 60%. *See Filtration Dev. Co. v. United States*, 63 Fed. Cl. 612, 627 (2005) (reducing the total fees including those attributable to the EAJA application by 40%); *Baldi Bros. Constructors v. United States*, 52 Fed. Cl. 78, 84-85 (reducing plaintiff's total fee request including fees attributable to the EAJA application by 33.3%); *KMS Fusion*, 39 Fed. Cl. at 603 (reducing fees attributable to the EAJA application by same percentage, 60%, that pre-judgment fees were reduced).

litigated this hotly-contested petition for attorneys' fees. An award of fees that is seven times the amount of damages appears to this Court to be reasonable under the circumstances of this case. *See Grant v. Bethlehem Steel Corp.*, 973 F.2d 96, 101-02 (2d Cir. 1992) (finding an award of attorneys' fees of $512,590.02 to be reasonable when plaintiff recovered $60,000 in damages); *Cowan v. Prudential Ins. Co. of Am.*, 935 F.2d 522, 525 ("Reducing the 'lodestar' fee from $54,012.76 to $20,000 simply because plaintiff was unsuccessful in proving damages amounts to a double-discount against this prevailing plaintiff for his lack of monetary success.").

  D.  *Plaintiff Is Entitled to an Award of $1,793.36 as Taxable Costs or, in the Alternative, as Reasonable Litigation Expenses Under EAJA*

  Plaintiff submitted a bill of costs for $1,793.36 along with supporting invoices and a statement from a court reporting firm (docket entry 125, Sept. 3, 2010) in order to recover costs associated with the taking of four depositions. Pursuant to 28 U.S.C. § 2412(a), EAJA entitles a prevailing party to costs, which are defined by 28 U.S.C. § 1920 to include "recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2). Defendant objects to paying costs associated with one of the four depositions—that of Ms. Bettie Morton because the transcript of her deposition was not used at trial. Defendant's Objection to Plaintiff's Bill of Costs at 3 (docket entry 117, Aug. 16, 2010) ("Def.'s Obj."). Even when a deposition transcript is not used at trial, however, it can still be a taxable cost if it "reasonably seemed necessary at the time [the deposition was] taken." *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1184 (Fed. Cir. 1996). Ms. Morton's deposition was taken because she investigated Ms. Greenhill's EEO claim that DOE had breached the settlement agreement. Plaintiff's Memorandum in Support of Bill of Costs at 3 (docket entry 121, Aug. 31, 2010) ("Pl.'s BOC Memo."). Not only did Ms. Morton testify at trial, but at the time her deposition was taken, it was entirely reasonable for plaintiff's counsel to believe that she would have relevant information. *Cf. Manildra*, 76 F.3d at 1184 (finding that costs of obtaining deposition transcripts were reimbursable when deponents were potential trial witnesses). Therefore, the cost of obtaining Ms. Morton's transcript is properly treated as a taxable cost.

  After filing her bill of costs, plaintiff also requested, in the alternative, recovery of the costs attributable to the four depositions as an "expense" pursuant to EAJA, 28 U.S.C. § 2412(d)(1)(A) and § 2412(d)(2)(A). Pl.'s BOC Memo. at 1. Courts have grappled with the question whether an expenditure listed as a taxable "cost" under 28 U.S.C. § 1920 may also, in the alternative, be recoverable as an "expense" under 28 U.S.C. § 2412(d)(1)(A). In *United Partition*, the Court's review of Federal Circuit precedent led it to conclude that expenses that are also taxable costs may be awarded either pursuant to EAJA or pursuant to 28 U.S.C. § 1920 "so long as there is statutory authorization for costs or expenses." *United Partition*, 95 Fed. Cl. at 63. This Court concludes that the deposition expenses at issue in this case are properly considered as taxable costs or as expenses reimbursable under EAJA, 28 U.S.C. § 2412(d)(1)(A). In either instance, plaintiff can only recover the amount expended to acquire the deposition transcripts once. There can be no "double recovery for costs." *Sorich v. Shalala*, 838 F. Supp. 1354, 1360 n.9 (D. Neb. 1993); *accord Cook v. Brown*, 6 Vet. App. 226, 238 (1994).

The costs of deposition transcripts for which plaintiff seeks reimbursement all relate to depositions of persons who testified about the claim on which plaintiff ultimately prevailed.[23] Of course, some of the time was spent questioning deponents about matters on which plaintiff did not prevail. But the "discovery was intended to be in furtherance of, and therefore directly related to, the . . . claim upon which [plaintiff] substantially prevailed." *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 470 F.3d 363, 371 (D.C. Cir. 2006); *see also Baldi Bros.*, 52 Fed. Cl. at 83, 89 (relying on *Hensley* to apply a percentage reduction of fees due to limited success, but declining to apply any percentage reduction of expenses to which plaintiff was otherwise entitled).[24] Because the four deponents testified about the claim on which plaintiff prevailed, the entire $1,793.36 was a properly taxable cost, or in the alternative, a reasonable litigation expense, pursuant to 28 U.S.C. § 2412(d)(1)(A). In either event, plaintiff is entitled to be reimbursed that amount.

The Court granted plaintiff's motion to proceed *in forma pauperis* after trial because plaintiff represented that she was unable to afford the cost of obtaining the trial transcript. Order Granting Plaintiff's Motion to Proceed *In Forma Pauperis* at 2 (docket entry 87, Oct. 8, 2009) ("I.F.P. Order"). The statute that allows plaintiffs to proceed *in forma pauperis* also states, "Judgment may be rendered for costs . . . as in other proceedings, but the United States shall not be liable for any of the costs thus incurred." 28 U.S.C. § 1915(f)(1). Courts have precluded *in forma pauperis* plaintiffs from recovering items listed as taxable costs in § 1920 because of the bar of § 1915(f)(1) on awarding costs against the United States to *in forma pauperis* plaintiffs. *Torres v. Barnhart*, No. 02 Civ. 9209, 2007 WL 1810238, at *16-17 (S.D.N.Y. June 25, 2007); *Jones v. Barnhart*, No. 1:02CV00042JFF, 2004 WL 2297857, at *1-2 (E.D. Ark. Aug. 30, 2004); *Adorno v. Barnhart*, No. 99 Civ. 2758, 2003 WL 21638208, at *3 (S.D.N.Y. July 11, 2003).

Although Ms. Greenhill proceeded *in forma pauperis*, she is still entitled to recover the costs attributable to the four depositions as taxable costs pursuant to 28 U.S.C. § 1920 and 28 U.S.C. § 2412(a) because she did not apply to proceed *in forma pauperis* until after the trial, i.e., after the four depositions had been taken, and after the transcripts had become available and her counsel had purchased copies on her behalf at the costs Ms. Greenhill now seeks to tax to defendant. The recovery of such amounts would merely permit Ms. Greenhill to be made whole for the reasonable litigation expenses she incurred in prosecuting her claim. There is no danger of a windfall to Ms. Greenhill as there would be, for example, if the Government had been required to acquire the deposition transcripts for Ms. Greenhill, and she then relied on her status as "the prevailing party" (*see* RCFC 54(d)(1)) to attempt to recover the cost of acquiring the deposition transcripts from the United States. Thus, because Ms. Greenhill is only seeking costs she actually incurred and those costs were incurred prior to her being granted permission to proceed *in forma pauperis*, § 1915(f)(1) does not preclude Ms. Greenhill from recovering such

---

[23] Ms. Stec drafted the contract at issue; Ms. Jackson was the supervisor at DOJ who tentatively offered Ms. Greenhill a job and then withdrew the offer; Ms. Morton investigated the breach of the settlement agreement; and Ms. Greenhill is the plaintiff. Pl.'s BOC Memo at 3.

[24] Notwithstanding the Government's other objections, defense counsel conceded that no *Hensley* reduction for partial success would be applicable to the costs Ms. Greenhill claimed. *See* EAJA Tr. 49-50.

costs against the Government either pursuant to § 1920 or as reasonable litigation expenses pursuant to EAJA. [25]

Based on the foregoing, plaintiff's award of attorneys' fees is calculated as follows:

|                                                  | Mr. Brown   | Ms. Brown  |
| ------------------------------------------------ | ----------- | ---------- |
| Total Hours Billed                               | 372.3       | 106.8      |
| Hours Excluding Those Not Reasonably Expended    | 289.9       | 64.2       |
| Hourly Rate (Including COLA for Mr. Brown)       | $173.39     | $150.00    |
| Fees Before Reduction for Partial Success        | $50,265.76  | $9,630.00  |
| Fees After 60% Reduction for Partial Success     | $20,106.30  | $3,852.00  |

The Court therefore awards attorneys' fees to Ms. Greenhill in the amount of $23,958.30 ($20,106.30 + $3,852.00 = $23,958.30).  Adding an additional $1,793.36 for taxable costs or, in the alternative, as reasonable litigation expenses pursuant to EAJA, the total award to which Ms. Greenhill is entitled is $25,751.66 ($23,958.30 + $1,793.36 = $25,751.66).

## CONCLUSION

For the reasons set forth above, plaintiff's motion for attorneys' fees pursuant to EAJA, 28 U.S.C. § 2412(d), is **GRANTED IN PART** and **DENIED IN PART**.  The Clerk is directed to enter judgment in favor of plaintiff in the amount of $25,751.66, which includes $23,958.30 in attorneys' fees and $1,793.36 in taxable costs or, in the alternative, reasonable litigation expenses pursuant to EAJA.

The Court entered a protective order in this action on November 17, 2008 (docket entry 25).  This opinion shall therefore be **filed under seal.**  The parties shall review the opinion to determine whether, in their view, any information should be redacted prior to publication in accordance with the terms of the protective order.  The parties shall file, within 10 days of the filing of this opinion, a joint report identifying the information, if any, they contend should be redacted, together with an explanation of the basis for their proposed redactions.

**IT IS SO ORDERED**.

 s/ George W. Miller
GEORGE W. MILLER
Judge

---

[25] The Government did not contend that Ms. Greenhill was precluded from recovering the costs she incurred to acquire the four deposition transcripts by reason of § 1915(f)(1).  Ms. Greenhill did not seek to tax the cost of acquiring the trial transcript to the Government.